UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action, File Number   11-cv-1123

| | |
|---|---|
| ASHLEY ANN CLARK | )<br>) |
|     Plaintiff, | )<br>) |
| v. | )   COMPLAINT<br>) |
| YOUTH VILLAGES, INC. | )<br>) |
|     Defendant. | )<br>) |

COMES NOW the Plaintiff, Ashley Ann Clark, by and through her undersigned counsel, complaining of Defendant and alleging the following:

**NATURE OF ACTION**

1) This action is brought for damages to redress the deprivation of rights secured to the Plaintiff by the following:

    A. Title I of the Americans with Disabilities Act ("ADA"), *42 U.S.C. § 12117, et seq*;

    B. Title VII of The Civil Rights Act of 1964 ("Title VII"), *42 U.S.C. § 2000e et seq.*, as amended, based upon Title VII's provisions prohibiting gender discrimination and retaliation;

    C. North Carolina statutory and common law of wrongful discharge.

**PARTIES**

2) This action arises from a violation of Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act.

1

3) Plaintiff, Ashley Ann Clark, is a citizen and resident of Culpeper County, Virginia. During the time of the events complained of herein, Plaintiff resided in Guilford County, North Carolina.

4) Upon information and belief, Defendant Youth Villages, Inc. is a private, non-profit corporation doing business in North Carolina which employs in excess of twenty (20) employees.

5) Plaintiff has been an employee of Defendant since July 2008, absent the time period during which Defendant was terminated from employment.

## JURSIDICTION AND VENUE

6) This Court has jurisdiction over this lawsuit pursuant to Section 107(a) of the ADA, *42 § 12117,* which incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C. § 2000e-5* and *42 U.S.C. §§ 12101 et seq*.

7) This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. Plaintiff's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8) Venue is appropriate in this Court under 28 U.S.C. § 1391 because the events giving rise to this complaint occurred in Guilford County, North Carolina, and all the discriminatory employment practices alleged herein were committed within

the jurisdiction of the United States District Court for the Middle District of North Carolina

9) Defendant Youth Villages, Inc. is an employer within the meaning of *29 U.S.C. § 630* (b) and within the meaning of Section 101(5)(A) of the ADA, *42 U.S.C. § 12111(5)(A)*. Defendant Youth Villages, Inc. is a "person" within the meaning of § 101(7) of the ADA, *42 U.S.C. § 12111(7),* and § 701 of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e.* Defendant Youth Villages, Inc. is engaged in an industry that affects commerce within the meaning of Section 101(7) of the ADA, *42 U.S.C. § 12111*(7), and Section 701 of the Civil Rights Act of 1964, *42 U.S.C. § 2000e.*

10) All Conditions precedent to filing suit under the ADA and Title VII have occurred or been complied with:

   A. Plaintiff timely filed a charge of employment discrimination on the basis of gender, disability and retaliation with the Equal Employment Opportunity Commission ("EEOC").

   B. The EEOC issued a Notification of Right to Sue, which Plaintiff received from the EEOC on or about September 28, 2011. See Exhibit A, Notice of Right to Sue.

   C. Plaintiff filed her Complaint within 90 days of receipt of the EEOC's Notification of Right to Sue.

## STATEMENT OF CLAIMS

11) Plaintiff is a 29 year old Caucasian female. Plaintiff began working for Defendant in the Greensboro, North Carolina office in July 2008, in a Family Counselor position responsible for the direct care of between 4-5 families.

12) During the entire period of her employment with Defendant, Plaintiff has performed outstanding service for Defendant and, in fact, Plaintiff received a promotion within the first three months of employment to the position of Clinical Supervisor.

13) In her role as Clinical Supervisor, her responsibilities included the supervision of between 4-5 counselors over a caseload of approximately 16-20 families. Her supervisory responsibilities included weekly treatment planning for all clients, leadership in meetings, customer relations, and identifying developmental needs of counselors.

14) Previous to her employment with Defendant, Plaintiff served in the United States Army where she was the victim of a sexual attack in June 2005, whereby she suffered severe and long lasting trauma. This trauma was diagnosed as Post Traumatic Stress Disorder, the symptoms of which include, but are not limited to, the following: depression; anxiety in large group settings; avoidance of places that cause her to relive the traumatic experience; emotional numbness; difficulty maintaining close social relationships; severe difficulty sleeping; lack of interest in activities; and confinement to her home, limiting activities.

15) During the hiring process with Defendant, Plaintiff fully apprised Defendant of the precise symptoms of her disability.

16) Plaintiff's disability did not affect her ability to perform the essential functions of her job as the job required predominately one-on-one or small group counseling.

17) The symptoms of her disability, however, intensified when she was coerced into extra-curricular social situations and forced to wear attire that left her feeling raw and exposed.

18) Upon information and belief, Plaintiff was harassed with respect to her disability and/or gender and was singled out and treated differently than other employees.

19) Despite Plaintiff's work performance, Defendant has discriminated against Plaintiff in the terms and conditions of her employment based on her gender and/or disability.

20) Plaintiff was regularly criticized for her inability to be with larger groups of people, which was a key disability specific problem.

21) Plaintiff was on occasion denied time off to see her doctor.

22) Plaintiff's supervisor refused to sign paperwork necessary for Plaintiff's Veteran Administration disability program.

23) Upon information and belief, Plaintiff was subjected to a hostile work environment and discriminatory treatment at the hands of Defendant.

24) On numerous occasions, Plaintiff made the Defendant aware of the discriminatory actions and of the hostile work environment.

25) Plaintiff was singled out and stigmatized for not wearing "female" attire despite the fact that she felt more comfortable wearing concealing clothing, thereby maintaining a sense of possible exposure of body parts to clients.

26) Plaintiff was made to buy and wear new clothing that made her feel uncomfortable despite the fact the she was dressing well within the office dress code and despite the fact that many employees at Youth Villages regularly dressed outside of the dress code and were not singled out.

27) When she voiced her concerns to management regarding the unusual requests in relationship to the dress code, she was personally attacked about her general appearance and hygiene, and she was also treated differently on a social level.

28) Plaintiff's direct supervisor, Kristin Sheridan, identified in May 2009 that Plaintiff was not permitted to associate with employees outside of work unless all employees were invited, despite other clinical supervisors spending individual time with employees outside of work.

29) After voicing her concerns to management, Plaintiff was given a greater workload and asked to do more than other similarly situated clinical supervisors.

30) Plaintiff continued to perform her job satisfactorily despite the hostile work environment and discriminatory treatment at the hands of Defendant.

31) In April of 2009, prior to being terminated, Plaintiff discovered that several documents necessary for Medicaid payment contained her forged signature, and she was promptly terminated when she inquired about these forged documents.

32) On or about August 27, 2009, Defendant terminated Plaintiff from employment as a result of her gender and/or disability, in retaliation for her prior complaints of discrimination, and/or for reporting allegations of forgery on documents necessary for Medicaid payments.

33) At the time at which Plaintiff was terminated from Defendants' employ, Plaintiff was fully capable of performing all of her job duties.

34) In February 2010, Plaintiff filed a charge of discrimination against Defendant with the EEOC and submitted an Intake Questionnaire and accompanying Affidavit. Plaintiff's Affidavit set forth the factual basis for a charge of discrimination against Defendant, and was submitted with the Intake Questionnaire. A true and accurate copy of Plaintiff's Affidavit is attached hereto as Exhibit B and incorporated by reference as if fully set out herein.

## FIRST CLAIM - VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (Disability Discrimination)

35) Paragraphs 1 though 34, inclusive, are incorporated herein by reference as if fully set out herein.

36) Pursuant to 42 U.S.C. § 12112, "No covered entity shall discriminate against a qualified individual with a disability of such individual in regard to job

7

Case 1:11-cv-01123-WO-JEP   Document 1   Filed 12/21/11   Page 7 of 17

application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

37) Youth Villages, Inc. discriminated against Plaintiff in violation of 42 U.S.C. § 12112 by refusing to engage in the interactive process, failing to reasonably accommodate her, and terminating her employment.

38) Youth Villages, Inc. is a covered entity as that term is defined in 42 U.S.C. § 12111. Youth Villages, Inc. had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or proceeding calendar year.

39) Plaintiff has a recognized disability under the Americans with Disabilities Act as that term is defined in 42 U.S.C. § 12102. Plaintiff's disability limits one or more of her major life activities. Plaintiff has a record of such impairment. Youth Villages, Inc. regarded Plaintiff as being disabled.

40) The actions of Defendant as set forth above constitute a violation of the rights of Plaintiff secured by 42 U.S.C. § 12102.

41) The actions of Defendant constitute unlawful, intentional discrimination within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12112.

42) Defendant engaged in discriminatory practices against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to be free from disability discrimination and retaliation as set forth in 42 U.S.C. § 12112.

43) Plaintiff has suffered lost wages in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

44) Plaintiff has suffered compensatory damages in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

45) Plaintiff is entitled to recover punitive damages from Defendant in an amount exceeding $ 10,000 as a proximate result of the conduct of Defendant as alleged herein.

46) Plaintiff has been forced to incur attorney's fees in order to enforce her rights and is entitled to recover reasonable attorney's fees as necessary for the prosecution of this action.

## SECOND CLAIM - VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (Disability Discrimination Based on Retaliation)

47) Paragraphs 1 through 46, inclusive, are incorporated herein by reference as if fully set out herein.

48) Pursuant to 42 U.S.C. § 12112, "No covered entity shall discriminate against a qualified individual with a disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Youth Villages, Inc. retaliated against Plaintiff for requesting reasonable accommodation in violation of 42 U.S.C. § 12205.

49) Plaintiff requested reasonable accommodation which is a protected activity.

50) Youth Villages, Inc. retaliated against Plaintiff, by refusing to engage in the interactive process, failing to reasonably accommodate Plaintiff, demoting Plaintiff, and terminating Plaintiff's employment. The actions described above constitute adverse employment actions in direct violation of the statute.

51) The actions of Youth Villages, Inc. occurred after Plaintiff requested reasonable accommodation.

52) Plaintiff has suffered lost wages in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

53) Plaintiff has suffered compensatory damages in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

54) Plaintiff is entitled to recover punitive damages from Defendant in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

55) Plaintiff has been forced to incur attorney's fees in order to enforce her rights and is entitled to recover reasonable attorney's fees as necessary for the prosecution of this action.

## THIRD CLAIM - VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (Hostile Work Environment)

56) Paragraphs 1 though 55, inclusive, are incorporated herein by reference as if fully set out herein.

57) During the course of Plaintiff's employment with Defendant, Plaintiff suffered from a hostile work environment based on her disability. Incidents of hostile work environment committed by Youth Villages, Inc. resulted in Plaintiff being denied compensation, and adversely affected Plaintiff's terms, conditions, and privileges of her employment in violation of 42 U.S.C. § 12112, et seq. This hostile work environment was based on her disability.

58) Plaintiff has a right, as a disabled person, to be treated fairly and reasonably. Youth Villages, Inc. created a hostile work environment toward Plaintiff because she had a disability.

59) Youth Villages, Inc.'s hostile work environment, and the actions of its employees, as provided in the paragraphs above, affected Plaintiff's ability to perform her job and caused Plaintiff to suffer emotional distress in the performance of her job. All of this affected the terms and conditions of Plaintiff's employment.

60) Youth Villages, Inc.'s hostile work environment toward Plaintiff, because she had a disability, constitutes a violation of 42 U.S.C. § 12112, et seq. for which Plaintiff is entitled to relief.

61) Plaintiff has suffered lost wages in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

62) Plaintiff has suffered compensatory damages in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

63) Plaintiff is entitled to recover punitive damages from Defendant in an amount exceeding $ 10,000 as a proximate result of the conduct of Defendant as alleged herein.

64) Plaintiff has been forced to incur attorney's fees in order to enforce her rights and is entitled to recover reasonable attorney's fees as necessary for the prosecution of this action.

### FORTH CLAIM – TITLE VII DISCRIMINATION, 42 U.S.C. § 2000e
### (Gender Discrimination)

65) Paragraphs 1 though 64, inclusive, are incorporated herein by reference as if fully set out herein.

66) 42 U.S.C. § 2000e-2(a) provides: "it shall be an unlawful employment practice for an employer" to discharge an individual, "or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individuals race, color, religion, sex, or national origin . . ."

67) During the course of Plaintiff's employment with Youth Villages, Inc., Plaintiff suffered from discrimination based on her gender. Incidents of gender discrimination committed by Youth Villages, In. resulted in Plaintiff being denied compensation, and adversely affected Plaintiff's terms, conditions, and privileges of her employment in violation of 42 U.S.C. § 2000e-2(a).

68) Youth Villages, Inc. discriminated against Plaintiff in the terms and conditions of her employment on the basis of gender.

69) During the course of Plaintiff's employment with youth Villages, Inc., Plaintiff suffered from a hostile work environment based on her gender. Incidents of hostile work environment committed by Youth Villages, Inc. resulted in Plaintiff being denied compensation, and adversely affected Plaintiff's terms, conditions, and privileges of her employment in violation of 42 U.S.C. § 2000e, et seq. This hostile work environment was based on her gender.

70) The actions of Defendant as set forth above constitute a violation of the rights of Plaintiff secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*

71) Defendant engaged in discriminatory practices against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to be free from gender discrimination and retaliation as set forth in 42 U.S.C. § 1981A(b)(1).

72) Plaintiff has suffered lost wages in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

73) Plaintiff has suffered compensatory damages in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

74) Plaintiff is entitled to recover punitive damages from Defendant in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

75) Plaintiff has been forced to incur attorney's fees in order to enforce her rights and is entitled to recover reasonable attorney's fees as necessary for the prosecution of this action.

### FIFTH CLAIM AGAINST YOUTH VILLAGES, INC.
### (WRONGFUL DISCHARGE)

76) Paragraphs 1 though 75, inclusive, are incorporated herein by reference as if fully set out herein.

77) The public policy of North Carolina protects and safeguards the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of gender or disability

78) The termination of Plaintiff from her position was in violation of the public policy of the State of North Carolina and specifically one or more of the following policies:

   A. The North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1, *et seq.* which makes discrimination on account of gender and/or disability an unlawful employment practice in North Carolina.

   B. The policy of the State of North Carolina to provide medical assistance to the poor and disabled by following Medicaid and Medicare Guidelines,

including payment for prescription drugs, to seek the best possible price for prescription drugs being provided with state funds, and to comply with all federal laws and regulations intended to control the costs of such drugs as set forth in N. C. Gen. Stat. §§ 108A-54 *et seq.* and the regulations governing the North Carolina Department of Health and Human Services, Division of Medical Assistance.

C. The policy of the State of North Carolina to comply with and assist in the enforcement of the federal False Claims Acts, 31 U.S.C. §§ 1331, and 3729-3733, and including recoupment of amounts spent on medical care, as set forth in N. C. Gen. Stat. §§ 108A-70 *et seq*. and N.C. Gen. Stat. 108A-70.11 *et seq*.

D. The policy of the State of North Carolina to prevent the forgery and or counterfeiting any instrument, or possess any counterfeit instrument, with the intent to injury or defraud any person, financial institution or governmental unit as set forth in N.C. Gen. State. § 14-119 *et seq*.

79) Defendant's actions in terminating Plaintiff due to gender and/or disability status was a wrongful discharge in violation of North Carolina public policy.

80) In subjecting Plaintiff to gender and disability harassment, including hostile environment, and in terminating Plaintiff's employment due in whole or in part to her gender and/or disability and also in retaliation for her complaints related to the same, Defendant violated the public policies of the State of North Carolina.

81) Defendant's actions in terminating Plaintiff as a direct and proximate result of reporting forgery in documents necessary for Medicaid payment was a wrongful discharge in violation of North Carolina public policy.

82) Plaintiff is entitled to back pay, interest on back pay, front pay, and employment benefits, including but not limited to vacation pay, sick pay, health insurance benefits, life insurance benefits and damages for emotional distress.

83) Plaintiff's losses are in an amount greater than $10,000.

84) Defendant's conduct as described herein was willful, malicious, oppressive, wanton and recklessly in disregard of Plaintiff's rights, so as to entitle Plaintiff to punitive damages under North Carolina law in an amount greater than $10,000.

85) As a result of Defendant's acts, Plaintiff has lost wages and benefits, and suffered emotional distress. Plaintiff is entitled to receive compensatory damages in an amount in excess of $10,000.00.

86) Defendant's managers were aware of, condoned, and participated in the illegal discharge of Plaintiff so as to make Defendant liable for punitive damages.

87) Plaintiff is also entitled to recover the costs and expenses of this action and such interest as may be allowed by law.

WHEREFORE, Plaintiff prays that:

1) Judgment be entered in favor of Plaintiff and against Defendant for consequential damages, including back pay and front pay, in an amount to be determined by the jury.

2) Plaintiff be awarded punitive damages in an amount to be determined by the jury.

3) The Court grant Plaintiff such other and further relief to which it deems Plaintiffs justly entitled.

A JURY TRIAL IS DEMANDED.

This the 21st day of December, 2011.

/s/ Gilbert J. Andia, Jr.
Gilbert J. Andia, Jr.
NC State Bar Number: 16533

/s/ Scott H. Dunnagan
Scott H. Dunnagan
NC State Bar Number: 38137
*Attorneys for Plaintiff*

OF COUNSEL:

HIGGINS BENJAMIN, PLLC
101 West Friendly Avenue, Suite 500
Greensboro, North Carolina 27401
Telephone Number: 336.273.1600
Facsimile Number: 336.274.4650